Good morning. I'm John Quirio of Horvitz & Levy, and I represent Defendant Appellant Zumiez. I plan to reserve five minutes for rebuttal, and I will keep track of my own time. This Court should reverse the District Court's order denying judgment on the pleadings because plaintiff's complaint fails to state any claim as a matter of law. Plaintiff's principal claim is for so-called reporting time pay for instances in which she, allegedly pursuant to Zumiez's policy, called 30 to 60 minutes in advance of her shift to check whether she needed to show up for work and was told not to. Well, that's not exactly a correct depiction of what was going on. My understanding is that, at least according to the complaint, this employer has scheduled show-up shifts and scheduled call-in shifts, and she was not just idly calling in to see if she needed to show up, but she was required to call in at a particular time, which was quite shortly before she was supposed to be at the store. And so it would be helpful if we had the right facts, that's all. And I have a question about the facts in that regard. The complaint says that she was required to call from 32 minutes to an hour before the time that the shift began. Maybe you're not the right person to ask. I understand that to mean it was up to her whether to call an hour or 30 minutes, but at least 30 minutes before. Is that your understanding of the complaint? That is my understanding of the complaint. I don't know exactly what that means, but it certainly suggests that there was flexibility between 30 to 60 minutes in advance. It didn't have to be a precise minute. But let's go forward with the actual story, okay, which is not that she was just idly calling up to find out whether she happened to be scheduled. She was scheduled for this special kind of call-in shift, and she was required to call at a particular time. But she wasn't required to show up, right? There was no schedule saying, you're going to show up unless we tell you otherwise. In fact, the presumption was the opposite, as I understand it. She wasn't scheduled to show up, and she was going to call in to find out whether she needed to come in. That's correct. These were shifts that she was not scheduled to show up for. She had to call 30 to 60 minutes in advance. And I'd just like to clarify, Your Honor, I certainly didn't mean to mislead the Court. That's why I said pursuant to Zumi's ---- I know, but your whole brief runs that way. And I mean, I have ---- I think this is a very hard case, but I think we have to start with the actual facts. Well, and I think we said in our brief that it was pursuant to Zumi's policy. I certainly ----  Yes, and we said that in our brief. I don't think she would be terminated on the first instance. Well, no, but I mean, she could be. Yeah, eventually, if that ---- She was required to call in at a particular time. Yes, 30 to 60 minutes in advance. Now, if she called in 3 hours before and said, or the day before and said, do I have to work that shift, it wouldn't do any good. According to the complaint, it's 30 to 60 minutes in advance. Discovery has not taken place. I understand. So it may well be that there were ---- and I think there was some flexibility. I mean, certain stores used it more than others. It was used in certain seasons. On your theory of the case, would it matter? I mean, suppose they ---- No. It wouldn't matter? No, because, and I would like to bring us to the legal issue at the heart of this appeal, which is the meaning of the phrase, report for work. The operative language of the wage order requires compensation for employees who report for work but are sent home without working or working less than half their usual or scheduled day's work. The words report for work, the plain meaning of those words is to show up at the place of work ready to begin working. It does not include calling in advance of a shift to check whether you need to show up at some future time. So suppose they said you ---- suppose the rule was you need to call five minutes before you arrive. So they're now ---- they've left their home. They're on their commute. They've left their children home or whatever. They're five minutes away, and the requirement is you call five minutes in advance. You don't have to ---- so they're not through the gates, but they're five minutes away. I think it ---- and that's certainly not presented in this case. But I think if you are effectively at the place of work already, so you're in the parking lot because you are, you know, three minutes in advance of your shift start and you call in, or five minutes, I could see a court saying, look, that's effectively being physically present at the location, right? I mean, nobody can call five minutes in advance of the shift and not basically be there already. But 30 to 60 minutes is categorically different, and that is not at the place of work. In no reasonable construction of language could it be seen to be. So I think for purposes of ---- and I think that case, the five minute or the one minute, whatever case, I think could be put off for another day. That presents a somewhat different issue. Also, I'm not sure, frankly, why any employer would do that to the extent this is considered helpful for flexibility. It wouldn't benefit employers or employees. Well, it would benefit employers because they wouldn't have to pay the person for showing up, if you thought they wouldn't. I think even employers need a certain amount of advance notice when an employee is going to show up, and five minutes just doesn't really provide that. So ---- Well, but I don't understand. If somebody is supposed to show up, then you assume they're going to show up. I mean, you don't call people. Ordinarily, if work starts at 8 a.m., you don't call, you don't require people to call in to say whether they're going to show up. You require them to call in to show, say if they're not going to show up, but the assumption is they are going to show up. But not for, according to the complainant, for these so-called call-in shifts. In that situation, they are not expected to show up. They have to call in advance, and they are then told, we need you to show up or you don't need to show up today. And isn't part of it the expectation? I mean, ironically, the fact that when they call in, they only have to show up 50% of the time suggests they shouldn't be expecting that they're going to be able to come in and work. Yeah, I think that would certainly be reasonable. It's far from a guarantee that they will be called in regularly. But in any case, I think the plain language here all points in one direction. Can I ask a question about the plain language? Sure. As I understand it, this was adopted in 1942, is that correct? Yes. That's your understanding as well? Yes. Don't we look at what the meaning of the term meant in 1942? Yes. Isn't that kind of the beginning and the end? Now, this was amended, and my understanding is the last amendment came in in 1963 or 1968. I might have the dates wrong. But none of that changed the substantive terms here. So are we stuck looking at the plain meaning of that language in 1942 or in 1968? Or can we look at what it means today? I think the appropriate lens is to look at what it meant when it was enacted and maybe the last time it was amended. And at those times, and even today, it means. So I don't think it really matters. But I think the appropriate lens is the intent and the meaning at the time of enactment. The Supreme Court's recent opinion in New Prime v. Oliveira, albeit that was an issue of Federal law. That has to do with, you know, how language is used at different times. But there's no indication there's been a change in language here. And I think that's a cogent point, Your Honor. And that favors us, because the meaning of report for work in 1942, when this provision was enacted, was clearly to show up in person at the place of work. And that's shown in particular by the use of the same phrase, report for work, in an adjacent provision of the same wage order, which required the provision of suitable transportation for female employees. This was a — Well, in fact, didn't all — this is something I just learned last night when I was reading this. It appears that the whole Industrial Wage Commission program only applied to women and children until the 1970s. Yes, it was a bit archaic. The entire — all wage orders only applied to women and minors, and then after child labor laws, just women, until sometime in the 60s or the 70s when it was extended to everyone. Obviously, that's not the world we live in today. But I think that the important point — and that, I think, may be why that transportation provision was ultimately eliminated, was because it was considered archaic. But — But also why all the examples in the manuals and legislative history were all about women, because that's what we were talking about. Yes. And the important point to remember with respect to that is that it used the same phrase, report for work. So when a woman was required to report for work between the hours of 10 p.m. and 6 a.m., suitable transportation had to be provided by the employer. That obviously necessarily assumes that she is coming to work in person and has to be transported back home. If the Industrial Welfare Commission meant to — if the words report for work meant something broader than showing up in person, calling in, or something like that, but the Industrial Welfare Commission meant to target showing up in person in that provision, they would have had to use different language. They would have had to use more clear language, like, for instance, if they show up in person for work. They didn't use that. They used the word report for work, which means that — and the same word, report for work, appears in our provision, the reporting time pay provision. And so they should be interpreted in parallel. The legislative history is in accord. Certainly the Industrial Welfare Commission, the Division of Labor Standards Enforcement, which is the State agency charged with enforcing these wage orders, has also consistently expressed its view — Can I ask a question? Why shouldn't we certify this question to the California Supreme Court? We now have conflicting district court opinions. I would say at least, you know, colorable arguments on both sides. I know we've been bothering the California Supreme Court with a fair number of these wage and error cases, but this one seems to me, you know, a very important case and one which could have large ramifications and which might be subject to some nuanced statutory interpretation, which we're not in a very good position to make. That is certainly an option this court has. I would, given Your Honor's question, I should alert the court that there is a pending appeal in the California Court of Appeal, the intermediate appellate court, presenting this issue in a case called Ward v. Tillys, and it should be coming to decision relatively soon. Which court? When was it submitted? I believe it was in November. They have 90 days. Yes, so it should be soon. In which court? In Los Angeles, the second district. Do you know which division? Division 3, I believe it is. And so we don't know what that opinion is going to decide. If that opinion goes for the employer's way, I would say there might not be as much reason to certify it in that case, because that would be in accord with the DLSC and all the other views expressed on this provision. What do you mean? What views? The DLSC, the Division of Labor Standards Enforcement, which this Court has relied on in the past as they have. But they haven't come into these cases now, have they? No, not as with briefs or those sorts of things, but in opinion letters in their manual in the past, they have indicated that. Not recently? No, not recently, but those sources are out there, and they could be relied on to indicate what the California Supreme Court might do. So if the Court of Appeal were to go the other way against the employer, that could be seen to create conflict around certainty in the law. In that case, certification might be more warranted. Certainly, we'll be filing a 28-J letter when that opinion comes out, and depending on what it says, we might request Lee to file a short supplemental brief for its impact on this case. This panel, of course, can consider that. If it's submitted in November and there's 90 days, it shouldn't be any minute. It should be very soon, yes. I'd like to reserve the rest of my time for rebuttal. Okay, sure. Thank you. Good morning, Your Honors. Cody Kennedy for Plaintiff and Appealee. I wanted to start off briefly by just addressing some of the questions brought by the judges in the defense counsel's previous argument. Now, there was a brief question about the 30- to 60-minute time frame that was alleged in the complaint. Plaintiff was alleging that they were required to call within a set and scheduled time frame. Between 30 and 60 minutes. Between 30 and 60 minutes. But it was okay if they called in 30 minutes. Exactly. Or if they called in 60 minutes. Exactly. So Your Honor's interpretation was correct on that matter. And also, in addition, Judge Nelson had posed a view that there was no presumption that she was called in to actually show up. In the complaint, it was alleged that these shifts were mandatory. She was required to call in and to show up for 100% of these shifts. The only difference is sometimes when she called in, they would cancel these shifts. She had to treat every single shift as mandatory. No, I understand that. But she wasn't scheduled to come into work. There was not a schedule that said any of these plaintiffs were scheduled to work before they called in. No, the schedule did say she was scheduled to come in for work, but she also had to call in. Okay, that's not the way I read the complaint. And that's actually pretty interesting because I think it has a bearing on how the statutory language reads. If she was scheduled to come in, but I read the complaint to say there are show-up shifts where you're required to show up. And then there are call-in shifts. And, yes, you're required to call in, but there's no presumption that you would come in or not. My apologies if the allegations of the complaint weren't clear on that matter. We were trying to cover that over the language that was stating that these shifts were scheduled and mandatory. And I believe paragraph 33. Aren't you both right? I mean, they were scheduled and mandatory, but only if when she called in they told her to come. So she was not scheduled to come in. She was scheduled to call in and come if they told her to come. And plaintiff's position is, at the end of the day, that distinction wouldn't make a difference. It is just semantics. And I'll briefly, I'll run back through more or less the allegations in the complaint and how this call-in shift process works. I think we know what the allegations in the complaint are. Actually, I want to get into the plain language because I think that really controls here. In my view, report, well, first of all, is report for work, does that mean the same thing as report to work? Is there a difference between those two phrases? Your Honor, plaintiff takes the same position as the trial court in this matter, that ultimately that was an issue of semantics. If anything, the fact that report for work was chosen makes it clear that there was no physical requirement. But at the end of the day, neither of those phrases is physically report to the workplace. They are simply that an employee must be required to report for work and must report. But that can't be correct. Given what we just heard, that in 19, it was what, five years after this one was adopted, there was a wage order that came out that said that clearly used report for work and assumed that the women would be there at work and that transportation would be required. So if your position is correct, that they would have had to say, no, you have to physically come in, that it wasn't implied in the use of the term, then that wage order wouldn't make any sense. Okay, so under that section of the – that's not the same section of the wage order that we're dealing with here. No, but we read statutes collectively. Presumably, words used in one section of the statute mean the same thing as words – do you have any reason to believe that when they said report for work in the 1942 wage order, they meant something different than when they used it in the 1948 wage order? Not when used in – I think the best way for me to address that is the differing intents of those two sections of the wage order. But why are we even getting into intent? If this is unambiguous, you've both argued, all the district courts that have heard this have said it's unambiguous, so intent doesn't matter. I mean, honestly, 80 percent of the briefing here really doesn't support it. The question is, does report for work mean that you have to physically show up? And I'll be honest, I've looked at every use of report for work going back to the 1800s. I haven't found a single instance in any English language publication where it doesn't imply a physical presence. I think Plaintiff's position is – our position is that it completely disagrees with that. I know your position disagrees with that, but can you cite me to any use? We've got some high school kids here. If they were sent a letter during the summer and said report for school in August instead of September, would any of these students really think that they could just call in and satisfy the report for school requirement? Yes, Your Honor. In a situation such as we have here, if the school necessitates a mandatory means of reporting, if they say you need to report to school by phone on this date and time? Absolutely. If they said report by phone, I totally agree with you. And if they just used the word report, I totally agree with you. But it seems like we're looking at report for work as a specific phrase. And I'm just telling you I'd like to see any example in the history of the English language where report for work does not require a physical presence. I haven't found it. Plaintiff cited several dictionary definitions which use the word report. Of report. Yes, of report. And I didn't see them to be all that useful to you because, for example, the Oxford Living Dictionary presents oneself formally as having arrived at a particular place or as ready to do something. But he's not ready to do that. I mean, neither one applies because he's not ready to work. He's got to be ready in an hour. Well, she is ready, willing, and able to commit to her scheduled shift, to come and do it. Yeah, but not for work now. I mean, it's at least not terribly helpful, it seems to me. And on the other hand, as I said before, I don't know where the cutoff is on the other side's argument either. But to run some hypotheticals for you, what if the rule was not that she had a call in, but that they would call her between an hour and a half hour? I think that would potentially make a difference. I think that would. Well, that's a very silly difference, isn't it? She still has to be ready to go. All right, Your Honor, you convinced me. No, you're right. I mean, that's the problem. I mean, if they didn't say you don't need to call us, we'll call you between an hour and a half hour and tell you whether you need to come. Is she then reporting for work? If they call her in the same way as if she calls in and she's supposed to treat these shifts as mandatory, and she says, yes, I'm ready, willing, and able to come in, and she's complying with the exact manner of reporting that her employer has set up. So the telephone, who's making the call has nothing to do with it. It's what she says. I'm ready to come. It's what she says and what's being required by the employer. The big thing here is that Zumi's position is that where the employer has established a mandatory means of reporting that's not physical in nature and the employee reports in the exact manner that's being required, it still doesn't count as reporting. But does it count as reporting for work? That's the question here. I understand the policy arguments here. I understand you don't want this. By the way, does Zumi's do this in all states, or is this specific to California on the call-in requirements? That I'm not aware of. This case was limited to California, and our plaintiff worked in California. What if it was 24 hours? What if the rule was you call 24 hours in advance? I think that presents an interesting factual question. Ultimately, the plaintiff's position is that if they're being required to report in a certain way and they're reporting as required by the employer, the employer shouldn't be able to circumvent the wage order, and the wage order still does not state these extra elements, physically report to the workplace. Absolutely the wage order says that. That's the whole point. The plain language clearly, clearly presumes that you're going to be physically present. You've twisted it to suggest that they had to say that you have to physically come, but that's not there. When you're using the plain language of report for work, the clear presumption, report for duty, you're going to physically show up, or at least be ready. I don't know. I agree. You know, I think we've heard it before. If they're on their way or they're in the parking lot, but there's no allegation that that's going on here. This is clearly, it seems to me, an employer who is trying to give flexibility to the employees to give them notice so that they don't have to come in. They can call in to find out whether they need to come in. Unfortunately. But what's the purpose of the added compensation? I'm sorry. The purpose of the added compensation is to compensate the employee for having to mold their life around these inefficient scheduling requirements. I believe the trial court noted the incentives that led employers to engage in the behavior that caused the IWC to create the wage orders provision in the first place still exist, creating a surplus pool of contingent workers ready to begin work at a moment's notice, only to notify some number of them that their services would not be required. That provides an enormous benefit to the employers while forcing the workers to prepare a set of contingency plans. During that time, the employees are not able to, they have to make the same arrangements and sacrifices as she would for any other shift in this call-in situation. She has to arrange for child or elder care during the hours of the shift. She can't schedule shifts in a second job. How many of these employees have to deal with elder care? That I don't know, Your Honor. How many have to deal with child care? That I don't know, Your Honor. But these are minimum wage jobs, and it would be very, very difficult for some of these employees to be able to make these sacrifices. That may be. That may absolutely be. But the question here is, is it covered by the wage order? The wage order doesn't cover every difficulty that an employee faces in holding a job. No, but it did overtly state, or at least the legislative intent behind it did overtly state, that it was meant to compensate for this exact sort of situation. That was in the DSLE manual, right? It was in the DLC manual. It was in several of the cited pieces of legislative history. When was the first time that that was mentioned? My understanding is in the DSLE manual. That was first mentioned in 1989, 40 years after this was adopted. When was the first time it was mentioned in the legislative history? That I do not have reference to that in my notes. Can a subsequent wage order board amend through legislative history what was adopted in 1942? I think that's the question I have. I don't think it needs to be amended here. The issue is the penalty here is tied to wages. It's not tied to travel expenses, travel time, any of that manner. It was specifically written in this broad manner in a way to where it could evolve in time. As the defendant had mentioned in their reply brief and their underlying brief, telephones were around at that time. It wasn't the primary form of reporting, but it is something that someone could have done work by phone and been required to call in and report, hey, I'm starting my work. If you work by phone, that's a completely different thing. In other words, if you're working at your home, you know, telecommuting, and the requirement is that you call when your shift starts and say you're now starting to work, I mean, that's a different thing because you're reporting for work because you're at the place of work. Your work is not at the plant or the store. It's wherever you are. So that doesn't seem helpful to me, to your point. Well, they are reporting for, unfortunately, I don't want to circle around, but in plaintiff's position is they are reporting for work. These are mandatory scheduled shifts. They have to treat them as if they're ready and willing and able to complete them. But not at that moment, an hour from now. And that's why, what if it's six hours from now? But let me ask you what I asked your opponent. Why shouldn't we certify this to the California Supreme Court or, as amended now, wait to see what the, perhaps wait to see what the California Court of Appeals does, but at least consider certifying it to the California Supreme Court? And this is going to end up sooner or later. If we rule in your favor, it's going to end up in the California Supreme Court by some other route. So why don't we just get this done and over with? They don't have to take it, but why don't we certify it to the California Supreme Court? Well, I think you'll be happy to hear we have a meeting of the minds in that manner. Plaintiff's position is, yes, this would be a really, really important issue to be certified for the California Supreme Court to hear. Additionally, just in preparation for this oral argument, I noted that the Southern District had also addressed this issue in a case, Seagal v. Aquient, LLC. I think that was Judge Burns. Yes, yes, Your Honor. And they compared the CASAS decision with that of our trial court here, and they found in the same vein as our trial court here. So this issue is going to keep coming up and keep coming up. We think that it would be absolutely a fine idea for the California Supreme Court to address it. So with this Ward opinion or this Ward case? No, unfortunately, I wasn't until I came in here today. I'm going to have to look into that and potentially plan on jumping in on that a little bit as well, just as defense counsel had mentioned. Hey, can I ask one question that you may not be addressing? You've got the call-in complaint or the request for compensation for call-in time. Yes. Or reporting time, I'm sorry. So that would be half of the scheduled shift, which is an interesting question. At a minimum. Yeah, a minimum of two hours, maximum of four hours. Are you requesting that in addition to the time? Yes. Are you pleading both of those as alternatives, or are you trying to get half of the compensated time for the schedule plus the time that they're on the phone? We are treating both of those not as alternatives but as simultaneous claims. Our position is that by making these phone calls under the direction and control of Zumi's management, this was a plan-designated thing that she had to do. She had to be on a call for, I believe it was alleged, seven to 15 minutes. This is no different than having a telephonic meeting with your manager, and that is considered work under California law. Then are they still working after they hang up the phone before they've actually reported for work? Well, the point of this position is that would be a break in work at that point, and that's another thing that lends to the fact that they have, in fact, reported for work. They were conducting work during that time they made that call, and at any point after that first reporting, the reporting time pay is triggered. You also have a separate reporting for work claim when they're at the site. Yes, when they're at the site after they had been scheduled for a show-up shift, and that's sort of an interesting claim there. Basically, how that would work was plaintiff's position is the fact that by designating these as two separate shifts and requiring two separate reporting procedures, it falls under Section B of the wage order, that by the second time they had, in fact, reported for work for that second shift. Defendant argues that because they're not actually leaving the location and coming back or there's no temporal gap in between the two, they're not two separate shifts. Plaintiff's position is that would be remedied by looking at it as more of an issue of fact. The reason is, I apologize. Let me compose myself for a second to try and give you the best argument going forward on that. But at the end of the day, when this is being argued, it's sort of a factual situation whether or not this is a single shift or two shifts by the fact that, one, they were designated as two separate shifts requiring two separate reportings versus the other side where there was no temporal gap in between the two. If it's found to be a single shift, they would still be liable for the shifts where the second half was longer than the first half because they were not given half of their daily wages. So at the end of the day, there would still be room for the claim to survive. It would just have to be potentially pleaded slightly different under those circumstances. But as I mentioned, that would all be remedied just by allowing it to move forward under the facts that these are two separate shifts with two separate reportings and the issues of fact could be determined later on. But as I understand it, and I'm not sure I understand why, it's an alternative claim. The district court did not reach it because he thought that the call-in claim covered it. And I gather you agree with that, but I really don't quite understand why. Oh, it's just because for the judgment on the pleadings, if you've stated a claim in one capacity, then it's been properly pled. No, but I understand that. What I don't understand is why the call-in claim covers this other claim. In other words, both you and the district court seem to think that if you prevail on the report for work, meaning the call-in, then the second shift situation is covered by that. Yes, Your Honor. And I'll do my best to respond. I'm not quite sure if I'm following the exact question. If we decide that you're right on the first claim, do we need to decide the second one? No, Your Honor. Why? Not because the claim has been stated, because the claim has properly been stated. And as long as the claim has properly been stated, then the ---- I'm sorry, but I don't understand. I'm with you, Judge. That's okay. I think our position is if defendant was seeking to strike just a portion of the claim, that was an alternative basis of the claim. But what's alternative about it? That's what I don't understand. Why isn't it additional as opposed to alternative? Well, it could be construed as additional. I understand what you're saying, Your Honor. Well, it would be additional. Yes. I mean, these are two separate issues. Yes, our position was if one of the two was stated, then that was sufficient to meet the pleading standard. And if a portion of that section of the pleadings was wished to be struck, that would be more adequately dealt with by a motion to strike versus a motion for judgment on the pleadings. All right. Thank you. Thank you. Are there some time for rebuttal? Just a brief ---- I have a technical question. It's related to the last colloquy. When a case is certified for interlocutory appeal, which is what we have here, what's being certified? I mean, it's certainly the certification concentrated on the precise issue, not on the entire motion to dismiss. So what have we got? My understanding of 1292B certification is that the entire order is certified for appeal. It may be that ---- What about things you didn't decide, like this claim 2? Well, that, I think, would follow normal rules of appellate review, whereby if it's a purely legal issue, it's certainly within this Court's power to review that. It's peculiar, though, because what's generating the appeal is the importance of a particular issue. Yes, that is an oddity of 1292B review, but my understanding of the case law is that while the conflict in the law as to a particular claim may spur 1292B certification, it is the entire order that is up for review and within this Court's power. If I could just get to the plaintiff's points, the issue of whether the policy is a mandatory reporting versus mandatory calling in, it's the defendant's position that what is mandated is calling in, not reporting for work at the time of the call. The plaintiff discussed public policy and the purpose behind this. Certainly, public policy can animate changes in the law, and if the public policy behind this provision as it exists today is considered inadequate or the provision needs to be changed, the California legislature stands ready to step in. We, in our brief, discussed how quite recently the California legislature has addressed this very area. So it's quite aware of this. But not addressed yet. Well, it considered enacting two bills. It's true it did not enact those bills, but I think that's evidence that it stands ready to address it again if necessary. Can I ask a question about that? Because I tend to agree that the fact that they didn't enact legislation doesn't really mean much. But when did these policies, because Zoomies is not the only one, clearly. We've got a lot of employers doing this. Is this only in California or is this nationwide that they're doing this? I don't know, as a matter of fact. I mean, I believe that this Zoomies policy was throughout its operations. I don't think it was just in California. And then the corollary to that is when was this started? Is this something that is fairly recent, like in 2013, 2014? That is not in the record, Your Honor, and I honestly don't know. Understood. Okay. You had a prior case in CASAS versus Victoria's Secrets. Yes, Your Honor was on that panel, yes. About three. I believe it was about three years ago. Years ago. Yeah, so it's at least. It's been going around. At least in the last three years. And the only reason I ask that is that's a potential way to make this relevant is if these were adopted as a policy matter by employers like three or four years ago, then perhaps the legislation has more bearing than I might have initially thought, because maybe the legislation then was a reaction to what the employers were trying to do. I think that's correct, Your Honor. And just to be clear, we don't point to those unenacted bills as evidence of what report for work means, because I think that's right. It doesn't have much bearing on that. But I think it does have bearing on the public policy argument. Plaintiff puts a lot of weight in her briefing on the public policy issues involved with this type of policy, and I think there the issue that the Well, and it perhaps is relevant to suggest that the California legislature thought that the wage orders don't cover this and that they needed to cover it. Yes. And I think that that is normally a stretch to make, but the circumstances here might suggest that that's possible. Correct. And just briefly, the plaintiff talked about her minimum wage claims and the second reporting time pay claims. We've briefed this, and I'm sure the panel is aware of those arguments. Our position is that the time for the minimum wage claim was not subject to the employer's control, the time spent on the call. We've just explained why. And on the second reporting claim, I'm also What about this idea that they're seeking both? It strikes me as pretty heavy-handed on the plaintiff's part, because if you're already by statute getting half of the reported time, whether or not you show up or not, then you want to tack on an additional 15 minutes. Why wouldn't that be subsumed if we were going to go that route? Well, I would agree with Your Honor. I think it is a bit overreaching. But in any case, on the actual legal test, this doesn't, under the Marillion case, fall within the meaning of control, is the employer's position. As to the telephone call. As to the telephone call time itself, the 5 to 15 minutes the plaintiff has alleged. I would just want to, on the second reporting time claim, it sounds like there's some confusion on that issue. The plaintiff alleged in her complaint that when an employee is scheduled for call-in shift immediately after a show-up shift, the employee must wait until the end of the show-up shift to ask their manager if they will be permitted to work the call-in shift. When employees report for these call-in shifts, they do so immediately before or at the beginning of the scheduled call-in shift. So my learned opponent said that there was maybe some factual uncertainty. According to her pleading, that is not true. The allegation is that there is no hiatus whatsoever. On your theory of report for, she is reporting for work and she is not. Why? She's there. They've pled that under subdivision B of section 5 of the wage order, which is the second reporting. I know. But why does it come under the report for work claim, not getting to the second shift? She's there for reporting for work for the second shift, and they're telling her to go home.  But it's the way that the Division of Labor Standards Enforcement has interpreted that, is that a reporting time pay is not owed unless there is a hiatus. So if you are for, so for instance, if. Well, that's not true. Because that, as I understood, well, at least when I looked at it, it seemed to me that the A, B, and C, which included the interruption language, pertain to both of the provisions, both the reporting time and the second shift provision. Although I think it's only relevant. I'm sorry.  Why is it? I mean, as I understood what it means, it's explained what it means, is, you know, if you're, if there is a rainstorm and you, and the person shows up and you have a flood and you can't give them a shift, then the interruption of work is there's no work. But the reporting time doesn't apply. That's what they meant. Well, my understanding of subdivision C is that it really is only relevant to subdivision B, because if you don't, if you can't show up in the first place at the beginning of your shift at the start of the day because of rain or whatever act of God, it's not an interruption. It's just you can't show up. Well, but they use the term interruption, meaning there's no work. Right. Meaning the work is interrupted. There's no work. Well, I interpret interrupt to mean a hiatus. You've been working. You have to stop working for some reason, and then you continue working. But leave that aside. And why? So if the second shift provision doesn't apply, why doesn't the report for work provision apply? They're there. They're reporting for work physically in the way you say they have to be, and they're told to go home. Well, I think it's a separate shift, and so I think the reporting has to be What's the difference if it's a separate shift? They're there. Well, because, again, if — I think that would nullify the second reporting time provision. The whole purpose of the second reporting time provision is if you have to — later in the day, after your first reporting, right, if there is a continuation of work, if you have to take a hiatus and come back, then you have a second reporting. If there is no hiatus and you just continue working, then you don't get reporting time. But the problem is that she isn't continuing working. She's being sent home for a second — a new shift when she's physically there. Well, again, not — it was a call-in shift, so it was not a show-up shift. It was not that she expected that she had to work. It was a contingent shift. I don't know that you can have it both ways. I mean, if she's physically there, she's reporting for work. I understand. It's our position that the second reporting time provision is the applicable one, so that would be the appropriate analysis. Okay. I see that I'm far from my time. Yes. Thank you very much. We appreciate your arguments. Interesting case. Thank you. The matter is submitted.
judges: Paez, Berzon, Nelson